May it please the Court, my name is Kaynard Hunt and I represent the Appellants Sletten & Brettin Orthodontics LLC and Daniel W. Sletten. Appellants seek reversal of the District Court's Rule 12b-6 Dismissal, where it ruled as a matter of law that Continental Casualty has no obligation to Sletten & Brettin under its policy, specifically ruling it has no duty to defend. Appellants commenced this action because contrary to the instructions by Sletten to appellee Wells Fargo Insurance Services, Continental Casualty Company failed to name Sletten & Brettin Orthodontics as a named insured on the policy, and correspondingly had failed to provide a defense to Sletten & Brettin for the lawsuit in which Dr. Bretton, who was an employee of Sletten & Brettin, was accused of posting false statements with regard to St. Croix Valley Dental. What did the unnamed parties do to try to get named? Nothing that I know of with regard to the unnamed parties. Well, they denied coverage because they weren't among the named coverage. Right, what- They didn't do anything to try to make sure that they were included in the coverage. Oh, I'm sorry, I misunderstood. What they did is, I mean, they had told the insurance agent that Sletten & Brettin was to be the named insured, and so the information, that was directly the directions of Dr. Sletten to the Wells Fargo Insurance Agency, which in turn then was to make sure that Continental Casualty wrote the policy with Sletten & Brettin as the named insured. What happened in this litigation, because we brought the lawsuit asserting that the policy needed to be reformed, that there was a breach of contract to get Sletten & Brettin as the named insured, Continental Casualty's policy on the Rule 12b6 motion was, it didn't matter. They said it didn't matter because they owed no duty to Sletten & Brettin regardless, because as I understand it in the underlying complaint, which is at paragraph 14 at A32, the only allegation in the complaint as to Sletten & Brettin, it states on information and belief, Dr. Brettin was acting on behalf of and with knowledge and consent of the other defendants and for their benefit. The other defendants who are listed in the underlying complaint are other dental practices for which Dr. Brettin was affiliated, including Sletten & Brettin, where Dr. Brettin was an employee. So paragraph 14 in the statement of the facts of the complaint, that's it, on information and belief as to Sletten & Brettin. Under these facts, it was reasonable for Sletten & Brettin to assume, based on the information and belief accusation, and its purchase of personal injury coverage, which specifically defined as a covered offense, written publication of material that slanders or disparages another's services, that there would be coverage, and at minimum, a duty to defend under these circumstances. Now why it's important that Sletten & Brettin is a named insured is because of the policy's definition of you. You is the named insured. So Sletten & Brettin asserted they were the you, they were the named insured. Did the district court resolve the reformation claim? No, just passed right over it and said basically it didn't matter based on continental casualties argument, saying well, you wouldn't get a defense or indemnify anyhow, so we're not even going to address that issue. But I think it is important because if you look at the policy, you have you as the named insured, and then you have a separate you, which is for employees, but while acting within their scope of their duties as such. Now the problem with the way this coverage is written, and which one court referred to as studied ambiguity, is the policy states the injury, which are the tort offenses, including intentional torts, and then says it must be caused by an occurrence. An occurrence is defined as an accident, which results in the injury, which is the intentional offense or the slander, etc., which is not expected or intended by you. So- How does an accident produce an intentional tort? It doesn't, and that's why, I mean, this court, it was addressed this, albeit under Iowa law, just last year in the case of Chicago Insurance Company versus City and Council of Council Bluffs, finding that, you know, it's ambiguous because you have, on the one hand, you read the offenses, which are intentional torts, and then you- The policy covers intentional misconduct. That's what it says, but then it defines an occurrence, saying, but only if it's caused by an occurrence. An occurrence is defined as an accident, which results in the covered tort. So let's say, so it says, let's take assault. So what it's saying is, we cover assault as the injury, but only if it is an occurrence. An occurrence is defined as an accident causing an assault, which is not expected or intended by you. I mean, you know, you're just kind of lost in this- Did the district court interpret it to mean negligent defamation, that someone says something negligently that harms another's reputation? Correct, and the problem, though, with that, and that's where the problem is, I mean, the policy doesn't say negligence. I mean, and negligent defamation isn't negligence in the way that you usually understand it. Because under Minnesota law, when we're talking negligent defamation, all we're talking about is that the publication or statement was made where you knew or, in the exercise of reasonable care, should have known it was false. That's what is negligent defamation. The difference from negligent defamation to the standard of actual malice is you publish it knowing it was false or had serious doubts about its truth. So it's kind of hard to see with that difference why there's- What was alleged against the defendant in this case? As with regard to Dr. Breton, the employee, it was alleged that he had made these statements, he had made them with malice, that he had made them intentionally with intent to harm. But as to Sletton and Breton, which is the one paragraph of the complaint, all it says is that on information and belief, that Dr. Breton was somehow acting with the knowledge and consent. And our assertion is here, I mean, how is that in and of itself enough to walk out of any obligation to defend when all you have is an information and belief allegation? He's the agent of the company, isn't he? He's an employee, but it's also alleged in that complaint that he's connected with a lot of different organizations. So all those different organizations are also named, and it's this generic allegations saying that they're basically saying- Was there any aspect of the allegations that alleged negligence? Not in the terms of negligence, in terms of publication. And the problem that there is in this area of the law is the fact that even if you allege, you allege it the way they did, it's really maybe only relevant for a public figure. Dr. Wolfe, who's the plaintiff, is a private figure, and he can proceed for negligent defamation without even amending the complaint because intent is not part of the underlying tort. So that's why it's so difficult in these defamation cases because this idea of intent is not part of the tort when you have a private figure at all. And so you can simply just, when you go to trial, you can just simply ignore the intentional allegation and- What would be the basis in the policy for a reasonable belief that the policy covered an intentional defamation? The reasonable belief is by the very nature of the offenses that are listed. I mean, the offenses that are listed are assault, battery, just a series of intentional torts, and it is- All of which have negligent counterparts. No, they don't. And I don't know of a negligent counterpart to assault. I don't know of a negligent counterpart to malicious prosecution. And it was exactly that concern that this court, in the other case that I referenced, the Counsel Bluff case that arose out of Iowa, that this court said, no, I mean, we can't deny under this basis because you're really eviscerating and making these distinctions which a reasonable person reading this is not understanding because you read the list of offenses and you go, okay, I mean, common understanding of what assault, battery, etc. is. The insurance company doesn't define those offenses. I mean, it just lists them. So a reasonable person reading those would understand that indeed it does have coverage under these circumstances. Did you cite us to other cases around the country interpreting this policy? Or is this a unique- I have presented a host of cases. What's probably unique about this policy is I think it's worse than most. And I tried to- I put in that specific language where you define- the injury is defined as the offense and then you use that in the occurrence. I could find no other case like that. But what you do find around the country is exactly this problem and it's been going on for decades. And that's why I say the courts- some courts have said it's studied ambiguity because the insurance company can slide back and forth without really expressing where is the line. Now, a lot of personal injury coverage is written not with this occurrence definition tacked on. Occurrence works with bodily injury or property damage. It really doesn't work when you're defining the injury as the offense. And a lot of personal injury policies will have specifically exclusions which go to the tort. So they will have a specific exclusion that if it's done with knowledge of the falsity. So you can read it and you can understand what you are getting. So if it's this, I don't have coverage. If it's this, I do. But this policy is very difficult. What do you say about the Minnesota Walser case? Excuse me, I'm losing my voice. Now, in Walser, certainly what the Minnesota Supreme Court said is that you can intend the act without intending the harm. But what the Supreme Court in that case also recognizes is that an accident is a happening, unexpected consequences, an event. And the problem that I have here is they want to say, well, negligent defamation would work to provide coverage. But when I look at the definition of negligent defamation, it's a publication of a statement where you knew or in the exercise of reasonable care, you should have known the statement was false. And I don't see how that fits within the accident definition even as articulated by the Minnesota Supreme Court. When you read the definition of occurrence in Part B, it says was not expected nor intended by you. What is it that you understand to be not expected or intended by you when you read that? I understand that you don't, as it's written, it says what's not expected or intended is the offense, the tort. So that's the problem. So if you- I'm sure that doesn't refer back to A, the injury or damage. But injury is the offense. So that's the problem. The injury, the definition of- That's the question. Is it the harm or the offense? I read it as the offense because injury is defined as the offense. And that's the problem. So I ask that this court reverse the district court's ruling, dismissing this case on a Rule 12b-6, by which it denied that the appellees had any obligation to the appellants. Thank you. Mr. Marshall. Good morning. Counsel, would you explain how this policy covers defendants or covers insurers for the types of offenses that are laid out, assault, battery, defamation? What have they purchased? Well, quite frankly, in this case, we're concerned with coverage for defamation, disparagement. But it helps to understand what the other things are that are in the same list. It does. It does. But in looking at whether or not there's coverage for this particular case, the court focuses on the appropriate language under Minnesota law. And while we could go down these paths and talk about coverage for some of these other listed events or offenses, the focus is really on whether or not, in this case, there would be coverage for the defamation that is alleged in this case, which was- What kind of defamation does this policy cover? Well, for example, this policy would cover, for example, I had Dr. Breton seen a patient one day. And the patient said, you know, I heard that Dr. Wolf just got back from South Africa. And Dr. Breton decided to go online and post a review and said, I heard that Dr. Wolf had gone to Africa. And I wonder if he was exposed to Ebola. I think everyone should take precautions. Now, he failed to check anything out there. He simply put this statement out. And he did it in his mind to protect the public health.  He brings a claim. Arguably, that would be the type of claim, the type of defamation claim that would be covered under this policy. Why would your policy exclusion that excludes damages for what a reasonable person could have foreseen, wouldn't a reasonable person be able to foresee that stating something like that in the current environment would be defamatory? They may or may not. I mean, he may, you know, that would give us into that more gray area. But in this particular case, he went online. Would you, it would be your company's position that if a reasonable person could foresee that stating that a competitor has been to South Africa or some portion of Africa where Ebola is present and that his client should be careful, that that might be something someone could reasonably foresee? That would be an argument, that would potentially be an argument, a defense to coverage in the case. But it would be a closer question than the case that we have here. You know, here we had someone go online, pose as a fictitious person, make up all of this about having gone to Dr. Wolfe, Dr. Wolfe messed up my son's teeth, things like that. So that in this case, there's, as the district court found, this was all done with a specific intent to harm the underlying plaintiffs in this case. So our position is that under the clear and obvious exclusions in the policy and the obvious definition of occurrence, that there's no coverage for this particular claim. So the appellants would like us to go down this road to looking at other parts of the policy that are not relevant and that's where they're getting into their arguments about ambiguity and illusory coverage. I'd like to respond to a couple of things that were brought up. With respect to, on information and belief and how we have to view this complaint. If the, since we're dealing with, if I'm reading this correctly, is the duty to defend. If the complaint could be arguably construed as also alleging negligence, wouldn't you have a responsibility to at least put up a defense? Yeah, I think we would. I would agree, but that's not this case. I think this case is similar to the AMCO case where the, in that case, where it was a complaint by 3M talking about, there was advertising going on and the question in that case was that they doctored some photos. They'd also done some testing in that case. And as this court found, the focus, the lower court had focused on the photos and whether they'd been doctored and answers to their student interrogatories in the case had shown that that was done with an intent to see that was the basis for their argument. But in that case, surely the doctoring of the photos, that was intentional. That was done with an intent to harm. But later on in that complaint, there was an allegation that the testing that was done was not done properly. Well, you could have done that testing willfully, done it incorrectly, intentionally with intent to come up with and harm the other side, or it could have been negligent. And when you look at the complaint in this case, there is no argument here of anything that's negligent on the part of Dr. Breton. With respect to the argument about the definition of injury in this case, the policy does define injury as including bodily injury and damage. That's found in the common policy conditions. So I just wanted to point that out to the court. So our basic argument, it's quite simple, is that in this case, Dr. Breton went online, posted these statements with the intent to injure the underlying plaintiffs. And that is precluded from coverage under our policy, the unambiguous coverage in the policy. And as I mentioned, I don't think it's in this particular case, the court needs to go and look at other provisions in the policy in order to make a decision on the case that's in front of this court. But frankly, when you interpret a policy as a whole, what that means is you're looking at the allegations of the complaint and you're looking at the policy for the relevant provisions that apply to that case. You don't look through the policy to see if the crime coverage in the policy is somehow ambiguous in order to say, well, the policy is ambiguous and there's coverage for this defamation claim. So once again, with respect to the ambiguity argument, it's our position that the appellates are asking this court to do some mental gymnastics, look at irrelevant parts of the policy that have nothing to do with the issue in front of this court. Do you all have similar provisions in this policy that have been attacked elsewhere? Not that I'm aware of, Your Honor. There have been some sort of analogous cases, but I think the language here is somewhat unique. There's not a lot of case law addressing this particular, the way this policy is formatted or set up. However, no court in Minnesota has ever found that the exclusion for expected intended injury is necessarily ambiguous, particularly when it's right here in the exclusion section, it's not hidden. So there's not a lot of direct case law. It's more like you have to look at the case law, how has the court applied these principles to this particular type of case law. With respect to the reasonable expectations argument, no insured, I think, would reasonably expect that they could go online and post false statements about another person or another business and do it with an intent to injure them and expect to have coverage. That just simply wouldn't be a reasonable reading of the coverage. I think it's clear from the policy that we don't cover that kind of conduct. In order for the occurrence, our reading of the policy is that the occurrence has to be unexpected and unintended. And it would be analogous to the idea that, say I was driving down the road and I intended to turn left and I hit a pedestrian crossing the road. While I intended to turn left, the occurrence is the fact that I hit the pedestrian. With respect to this claim, Dr. Breton created this whole fursona. He posted it on the internet and he intended to injure the underlying plaintiffs. There was nothing, there was no allegation, the complaint that he posted these things under a mistaken belief as the truth or falsity. There is no allegation that there was any kind of unintended consequence as a result of his posting these statements. Dr. Wolfe's wife did not leave him or anything like that. There were no other consequences. You would expect when you put this kind of thing online that it would call into question Dr. Wolfe's abilities. And if you had a small child, you might not want to take the child to that particular dentist. As far as the illusory coverage argument, our position is that that is so thin in this case because, as I gave the example earlier with respect to Ebola, that there are any number of circumstances that could give rise to potential coverage under the policy. So it's your position that intentional acts are covered, but acts done with intent to injure are not? Is that your position or not? It's an intentional injury exclusion under the policy and that's an important distinction to make. Acts are covered as long as the harm is not intended. In other words, an intentional acts exclusion is very different from an intentional harm exclusion. And what do we have here? We have an intentional harm exclusion. There are policies that do have intentional acts exclusion. So when it says, was not expected nor intended by you, is that a reference to accident or to the harm caused? That is in reference to the harm. Because it would be, like I said, you intended to act. For example, you intended to post this statement. However, you did not intend the harm. And I will admit it's a little bit harder analytically when you're talking about defamation than it is from bodily injury or property damage. How does an assault fit? An assault, I think it would be the same sort of analysis. Is that when you look at the complaint, if there was any kind of inference or if it was within the scope of what's argued in the complaint, that this conduct, the actual hitting of someone or something, did not intend to injure, then there would be potential coverage and you would probably have to defend that. It's similar to the Walser case a little bit where the kids were playing, they were pulling the other student. There could have been a claim in that case that it was a battery, that these kids intentionally pulled on this guy and were intending to injure him. So potentially there would be unintended harms involved. Or that the battery itself was not intended. It would depend on how the complaint was alleged. A lot of those types of cases you would see both intentional conduct alleged and negligent conduct alleged. In conclusion, we're asking this, as the district court found, under the facts of this case, there is no duty to defend or indemnify. No possibility of that occurring. I understand that the underlying case has been resolved. There won't be any amendments to the complaint. Is that a matter of public record? I believe it's, yeah, I believe it's in the . . . Is it in the record before? It's not in our record. It's not in our record. I believe it happened after this case was briefed, Your Honor. Thank you. The Minnesota courts have not addressed this situation. A multitude of courts have. And I direct the court's attention to my initial brief, pages 25 through 36, with a host of jurisdictions which have found the ambiguity. Specifically direct the court to the Rhode Island Supreme Court decision. And there's a case on Indiana addressing the problem with this intent to act versus intent to harm. And the courts have there recognized that when you're talking these list of offenses, a reasonable insured just isn't going to see the distinction and found that there was an ambiguity. The other case I direct the court's attention is to the Ram Mutual Insurance versus Meyer. It's out of the Minnesota Court of Appeals, and it's page 38 of the brief, recognizing that under Minnesota law, that intent to injure is not a part of the defamation claim. So you can have the situation where you can say whatever in the complaint, but it's really irrelevant ultimately to the resolution of the defamation claim. Do you agree that the underlying claim has been resolved and there won't be any amendments to the- The underlying claim has been resolved. So basically what we're looking at is a recovery for the duty to defend, the denial of that, and with regard to seeking reimbursement for the settlement. But the complaint wasn't amended at all? Complaint was not amended, no. Thank you. Thank you.